This is Morales v. Tri Star Marketing for the appellant, Mr. Burrigan, and for the appellee, Mr. Galanos. You may proceed. I received an unusual request from the court on this case, which was to specifically look at a case that the So rather than bore you with a recitation of the facts or anything else, I thought maybe I would dive right into the case of Lupidius v. Ha. I looked at this case, I was kind of curious as to what your interest was, other than the facts seem to be very similar to the facts that we have in our case. It's a good recitation of the law as it existed at that time, and sometime prior as it did, there was evidence in that case of snow that are unnatural. I know from that case that there was plenty of testimony that water was dripping off of the structure. There was no evidence as to why the water was dripping off the structure, but it clearly was. There was evidence in that case that it hadn't snowed or rained two and a half days, maybe the night before, but that there wasn't any snow or frozen accumulations on the street that could account for the icy patch that caused the plaintiff's injury. And the court recited the mantra that the property owner has an obligation to maintain the premises in a safe manner for its patrons who are ingressing these rights to the premises. And in terms of our case, what we have, which is not perhaps the plethora of testimony that was in this case, but we have sufficient testimony to establish the following elements. One, there was a piece of ice on the parking lot or the ramp or whatever you want to call that area that had not precipitated for quite some time, that there was no ice or snow present anywhere at all in Springfield. There was no ice or snow present on the lot. And we have the affidavit of the wife of Mr. Morales, who says that this is where the ice was. It was located right where the drip line is for the canopy. And then the only other element that we have to as I understand it, that this accumulation was not natural. And natural basically is how God intended for it to land when it fell from the sky, not how it ended up dripping off the structures. Whether the other side had sufficient knowledge of this condition to be aware of it and do something to correct it, because obviously knowledge is important. In any substance case, even if you have a substance case in a supermarket where something happened, the owner of the supermarket has to have sufficient time to see it and remedy it. So in this particular instance, I think we have the full elements that we need. And of course the affidavit is that my client went in and said, hey, you know, I just fell on this. And the store clerk says, yep, we know it's there. Someone else has slipped on it before you. So we have established all those elements that we need to establish. We have a prima facie case. And frankly the way I look at this case, we should probably have been the ones moving for summary judgment on liability as opposed to the defendants. When we have a case where we've established all of our elements, we do not have to go up on the roof and say, well, you know, here's the reason. It's not what is the reason. The fact is that this is where it's coming from and it's not natural. Now I haven't looked at the record completely, but there is a motion for summary judgment that was filed. I believe all the photographs were attached there too. I've attached two photographs as an exhibit to my brief because those are the photographs that my client took. But if you look at the photographs that were attached, there are also some photographs that I took a year later of that canopy showing frozen precipitation right along the ice happening at the time. But what it does demonstrate is if you look at the photograph in that deposition exhibit, which is summary judgment C-34, there should be some photographs back there. If you look at those photographs and you see where that ice is, and then you look at the exhibit, the photographs that I attached for the convenience of the court, you'll see that there's a crack in the concrete, you know, what they call expansion cracks that they put in the concrete. That patch of ice is right at the expansion crack. You look at the photographs that I took later, you see that ice dripping off that canopy is right there. So if we were to try the case, and I expect that we will, that would be evidence that this is where that ice would have fallen if it fell from there. There's no other explanation for why it's there. And, you know, people have gone to death row based upon circumstantial evidence. And the jury instruction is very clear that circumstantial evidence is to be taken as all other evidence in the case. And that this place was caused by an unnatural accumulation dripping off the roof. So I'm not going to harangue you with this. If you have any questions, I'd be more than glad to answer them. Don't appear to be any. Okay, well, I'm going to make one statement to the court. I was telling counsel, I just took a CLE course on legal writing, and they said that no I'm hoping you won't complain that my brief is too short in this case. You'll have additional time to report on this, Your Honor. May I please report, counsel? Your Honor, my name is Chris Galanos, and I represent the defendant in this matter. Before I touch on the Lapidus case, I'd like to take just a moment to frame the issues, as I think the trial court ruled on them, and the way they were presented in the record. The complaint alleges a defect in the academy, specifically a leak. And we took the plaintiff's deposition. He testified that he had no idea how this ice formed. And I think that's a critical fact. The case law is clear that a plaintiff seeking to establish a liability in a slip-and-fall case has to show the cause of the ice formation. So when the plaintiff says he doesn't know how it formed, and there's no evidence of a leak, he's already failed to meet the crime of aphasia case stated in his complaint. Then they turn to the affidavit of the plaintiff's wife, which changes the location. Now they're claiming it was at the edge of the canopy. But the plaintiff's wife does not testify, the plaintiff didn't testify, and there's no evidence at all in the record that anybody saw water dripping from the canopy to the location where they're claiming this patch of ice was. So I don't think that the trial court faced with that evidence had no choice but to find that a summary judgment was appropriate, because there's no evidence that this was anything other than a natural accumulation of ice and snow. What about the photographs? The photographs look to me like there's just this patch of ice in the middle of dry sidewalk. How could it be anything other than an unnatural accumulation? Well, Your Honor, I think the, and I'd like to touch on Plaintiff Counsel's comments in the photographs that he attached, and those are clearly not evidence in this case. They were objected to in the summary judgment motion, they were taken apparently by Plaintiff's Counsel at some time. I'm not talking about those. I'm talking about the actual photographs from the day. Okay. In that case, Your Honor, those photographs are pretty limited in what they depict as far as the area. They do show a, what appears to be an isolated patch of ice right in front of a gas pump. I agree that's what they depict, but these canopies are not enclosures. They are during wind, and we know that there was obviously a snowfall at some point. It was testified to by the plaintiff, and it's equally plausible that this patch of ice was formed due to natural accumulation of ice and snow that had been there. And I don't want to stray too far from the record, but part of the basis for the natural accumulation rule is the courts have taken judicial notice of the winter conditions in central Illinois. We have these heavy snowstorms. We have rapid fluctuations between below freezing weather and above freezing weather, and a good example is the last 10 days here at Springfield. We had a huge snowstorm, negative temperatures below zero. The next week we were up in the And that's the reason the natural accumulation rule exists. That's why it's the plaintiff's burden to show that these conditions, where they exist, are unnatural. And there's nothing in this record to establish that. All we have is a patch of ice and nobody having any evidence as to how it formed. And the case law is clear. The Gilbert case, the Crane case that we cite all state that it's the plaintiff's burden to show how it formed. And Lapidus turned to the court's case as a prime example of what the plaintiff has to show and didn't show in this case. In Lapidus, well first in Lapidus, there's a procedural issue that I think is critical. That case went to the jury with an instruction that if they found that there was a defect in the roof, they could find the defendant liable. At the appellate court level, the defendant objected to that or stated that as a basis for appeal because there was no evidence of a defect. The appellate court agreed but said it was waived. So what that jury heard was that if they could find evidence of a defect, then they could find the defendant liable. Then they heard testimony from four separate witnesses who all individually watched water pour from this roof onto the plaintiff's porch or balcony where it pooled in a depression that was clearly in the balcony, clearly a defect in the porch. So you have multiple potential defects. Clearly a defect in the balcony itself which allowed the water to pool and accumulate and form a patch of ice. You had the plausible inference that there was a defect in the roof because they watched this waterfall. And it's important, they watched this waterfall for a period of years and on the day of the plaintiff's fall. There was specific testimony that they saw the water fall where it froze and allowed the plaintiff to slip and fall. No similar facts here. There's no evidence that there was a defect in the parking lot itself, no evidence of a defect in the canopy, no evidence of water dripping from the canopy to the patch of ice. There's simply a patch of ice. And that alone under the case law is not sufficient to withstand a motion for summary judgment. Again, I pointed out the fact that the plaintiff alleged two different theories. And with regard to the defect case, the Cazuel v. Hayden case, the Fourth District case, I think is very instructive on what needs to be shown. And they need to have some form of testimony establishing an actual defect. Here, there's obviously no such testimony. And so as far as that allegation which is contained in the complaint, I think summary judgment was clearly appropriate. Then plaintiff switched gears and brought this theory that water dripped from the canopy. And the plaintiff hasn't put forth in the case law that I can see that states that simple dripping from the canopy, even if it could be established, would be enough to be considered a defect without more. But here we don't even have that. There's no evidence of water dripping from this canopy at all. And to Your Honor's point with regard to the pictures of the ice patch, that was clearly in front of an interior gas pump, had nowhere near the edge of the canopy as the affidavit claimed. So if the plaintiff is trying to move forward on the dripping canopy theory, that picture doesn't help him at all. If he's trying to move forward on the leak claim, that picture could be evidence perhaps if he was able to establish a leak and drip it. But again, there's just no evidence of that. So in short, Your Honors, and I'll be happy to take any questions, I believe the plaintiff has the burden of establishing this ice formation as anything other than a natural accumulation. There's no evidence to suggest that, there's no circumstantial evidence to suggest that that is sufficient to withstand the most presumptive judgment. The PGA case we cite clearly shows that when you're trying to rely on circumstantial evidence to create a genuine issue of material fact, the circumstantial evidence has to be such that the conclusion reached is more probable than not. Not just possible. And there's nothing in this record that will allow the court to reach that conclusion. And as such, we would respectfully request the court uphold the trial for its granted summary judgment. Thank you. Thank you. Rebaul? I've never known an attorney who could say no to one of these questions. I'll be brief. First of all, let's talk about defects. I've not seen a case that requires that there be a defect. I've had plenty of these cases where the water that's caused the ice was due to the fact that someone deliberately ran a downspout from a canopy onto an area where someone is going to walk and that freezes. That's not a defect because there's nothing wrong with the downspout. It's just that you decided to create this condition through your own design. And the case of Lapidus says the rule is not applicable, however, where the landlord in some way caused an unnatural accumulation. Well, I don't have to. My client doesn't have to go up on that canopy and point out a hole. All he has to say is look at it. You put the canopy up there. It's holding water somehow, and water is dripping off, and it's causing ice to form. The only case that the appellee has cited that deals with we have to show a defect is that wonderful case of Gilbert versus Toys R Us. And I've made a comment about that in my one-page reply brief, which I'm going to stand on. But when the court asked me to look at this Lapidus case, I decided to shepherd it. And what pops up? Gilbert versus Toys R Us. And Gilbert versus Toys R Us says, relying upon Lapidus, that you have to show what the defect is. Now, after that, I read Lapidus five or six times because sometimes in my dotage I don't catch things because I'm more interested in seeing the things that I want to see. And I read it, and I read it, and I read it. And I don't see in Lapidus it says we have to establish what the defect is. My client says he doesn't know why the water was dripping from there. How could he? Why should he? He doesn't need to know. All he needs to know is that it's not how it came from the sky. And that's where we are in this particular case. I'm remnant of a case I just got that I never even knew existed, that the state of Illinois Department of Corrections has the right to collect the cost of inmates' upkeep from the inmate if they have any revenues, which I thought was interesting. I started doing some research, and the Supreme Court said, well, even though the statute says the burden's on the Department of Revenue, really the burden's on the inmate to show that they don't have any income because who would know better? Well, once we establish that there's an accumulation of water, I think that there should be some burden shifting here. And if they want to say it didn't happen, they should have some basis for saying that they didn't. There's no counter-affidavits. There's no other information. So my view is that we have a prima facie case. We should go back down and try this thing. Thank you very much for your time, and thanks for affording us the opportunity to argue this today. Thank you. We will take this matter under advisement and stand in recess until further call.